### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW HAMPSHIRE

__Deanna Richards__

        __v.__                                    Case No. 10-cv-92-PB
                                                   Opinion No. 2011 DNH 027
__AT&T Mobility Disability__
__Benefits Program__

### MEMORANDUM AND ORDER

        Deanna Richards, a former participant in the AT&T Mobility
Disability Benefits Program, brings an Employee Retirement
Income Security Act ("ERISA") action against the Program seeking
to recover long-term disability benefits allegedly owed her.
Both Richards and the Program have moved for judgment on the
administrative record.  For the reasons set forth below, I grant
the Program's motion and deny Richards' motion.

### I. BACKGROUND[1]

__A.    The Program__

        The AT&T Mobility Disability Benefits Program ("Program")
is a component program under AT&T Benefit Plan No. 1.  The Plan

---

[1] The background facts are drawn primarily from the parties'
Joint Statement of Material Facts (Doc. No. 10).

Sponsor and Plan Administrator, as defined by ERISA, 29 U.S.C. § 1001 *et seq*, is AT&T Inc.  The Claims Administrator is AT&T Integrated Disability Service Center, a division of Sedgwick Claims Management Services, Inc.  In its role as Plan Sponsor, AT&T delegated to the Claims Administrator the fiduciary responsibility for the administration of all claims under the Program.  See Summary Plan Description: AT&T Mobility Disability Benefits Program ("SPD") at 29 (Doc. No. 1-1).  Under the Program, the Claims Administrator has the power to "determine whether [an employee is] Disabled under the terms of the Program for STD, LTD or Supplemental LTD benefits."  Id. at 22.

The Program offers both Short Term Disability ("STD") and Long Term Disability ("LTD") benefits to eligible AT&T Mobility employees.  Under the Program, an eligible employee is entitled to up to twenty-six weeks of STD benefits if, as a result of a disability, the employee is unable to perform the duties of his or her "Customary Job."  See id. at 8.  "Customary Job" is defined as "the work activity that [the employee was] hired to regularly perform for the Employer and that serves as [the employee's] source of income from the Employer."  Id. at 29.

Upon the expiration of STD benefits, an employee is eligible for LTD benefits as long as the employee remains "Disabled" under the terms of the Program.  See id. at 8.  An employee is considered "Disabled" for the purposes of LTD benefits if "[d]uring the first twenty-four (24) months after [the] exhaustion of STD Benefits, [the employee is] continuously unable to perform [the employee's] Customary Job."  Id. at 11.

**B.   Medical Evidence**

On April 9, 2008, Richards, an employee of AT&T Mobility Services LLC, suffered a back injury while attempting to lift a rolling cabinet door.  Richards was initially treated for her injury on April 14, 2008 by her primary care provider, Certified Physician's Assistant ("PA-C") Judith Santangelo.  During the appointment Richards indicated that "[s]he was unable to work longer than 2 hours today because of her pain."  Admin. R. D00473.  A week later, in a follow-up appointment with PA-C Santangelo, Richards explained that "[o]ver the past week the pain has persisted making it hard . . . to walk[,] sit or stand for any length of time" and that she was "not able to return to work" since her position required her "to stand all day with frequent bending."  Id. at D00476.

3

On April 30, 2008, Richards returned for another follow-up with PA-C Santangelo.  During this visit, Richards noted a "[s]light improvement with the pain in [her] lower back and [] left leg," although Richards complained that she was still "having back spasms and can only stand for a few minutes."  Id. at D00483.

On May 27, 2008, an MRI of Richards' lumbar spine was performed at Portsmouth Regional Hospital. A report of the MRI noted as follows:

> A very mild diffuse disc bulge is present at the L2-3 level without evidence for neural foraminal[2] narrowing. Moderate disc space height loss is present at the L3-4 level with a small central disc herniation.  Mild bilateral neural foraminal narrowing is present at this level.  Moderate to severe disc space height loss is present at the L4-5 level with a very mild diffuse disc bulge and mild bilateral neural foraminal narrowing.  The fat about the exiting nerve roots is intact.  Moderate disc space height loss is present at the L5-S1 level with a left posterolateral[3] disc herniation measuring 13 x 6 mm in size, which impinges upon the exiting nerve root at this level and also upon the lower exiting nerve root. This results in a mild spinal stenosis[4].

---

[2] "Foramen" or "foramina" is "an aperture or perforation through a bone or membranous structure."  Stedman's Medical Dictionary 698 (27th ed. 2000).

[3] "Posterolateral" means "behind and to one side."  Id. at 1431.

[4] "Stenosis" refers to a "stricture of any canal or orifice."  Id. at 1695.

4

Id. at D00244.

On June 25, 2008, Richards was examined by neurosurgeon Dr.
Clinton Miller.  In his report, Dr. Miller noted that Richards
was a "pleasant, friendly, cooperative woman" who "appears in no
acute distress and who gets about the office and examining room
with ease."  Id. at D00280.  Dr. Miller went on to state that
the

> [G]eneral physical examination is notable only for
> weight issues.  Examination of the back shows a normal
> spinal curvature with somewhat hyperlordotic[5] lumbar
> curve.  Her gait is slightly cautious but not antalgic[6]
> and she was able to walk on her tiptoes and on her
> heels without difficulty.  Tandem gait is normal.
> Detailed manual motor testing shows universal normal
> tone, strength and coordination throughout both lower
> extremities.

Id. at D00280.

In Dr. Miller's opinion, Richards suffered from "[l]ow[er]
back pain with intermittent right or left lumbar radiculopathy[7]
due to multilevel lumbar degenerative disk disease and

---

[5] "Lordosis" refers to "an anteriorly convex curvature of the
vertical column . . ."  Id. at 1032.

[6] "Antalgic" or "analgesic" is characterized as "reduced response
to painful stimuli."  Id. at 67, 94.

[7] "Radiculopathy" is a "[d]isorder of the spinal nerve roots."
Id. at 1503.

spondylotic[8] lateral recess stenosis."  Id.  Dr. Miller also
noted that he did "not see any reason to actively consider[] a
neurosurgical treatment option at this time given her functional
status" but instead emphasized that Richards should do "core
strengthening exercises faithfully . . . get plenty of aerobic
exercise through reinstitution of her walking program; use short
bursts of high-dose nonsteroidal anti-inflammatory agents to
manage flare up of back or radicular leg symptoms and adopt good
body mechanics proactively in all of her lifting activities."
Id. at D00280-81.

    Over the next few weeks, Richards continued to see PA-C
Santangelo.  During these visits Richards relayed that she had
been "[m]aking progress with physical therapy and water therapy"
and that she could "now stand and walk for 15 min before having
worsening pain."  Id. at D00505.  Richards did not feel that she
was ready to return to work, however, as she continued "to have
limitations on being able to sit bend stand for any length of
time."  Id.

_____

[8] "Spondylosis" is the "ankylosis" or "stiffening or fixation" of
"the vertebrae; often applied nonspecifically to any lesion of
the spine of a degenerative nature."  Id. at 90, 1678.

On September 2, 2008, Richards was examined by Dr. Stuart Glassman of Granite Physiatry in connection with Richards' claim for workers' compensation benefits.  Dr. Glassman noted his impression that

> [Richards] has no disability as it relates to the lumbar strain injury of 04/09/08. . . . [H]er physical examination today does not show any acute, ongoing lumbar strain injury. She would have no work restrictions and would be able to work full time, full duty. . . .  No further medical treatment or prescriptions are felt to be reasonable, medically necessary, or causally related to the injury date of 04/09/08.  Please note this claimant currently says she is using Ibuprofen at nighttime, but only uses Tylenol or Flexeril two to three times a week. Clearly, this usage of medication would lend against any acute ongoing problem at this time.  It is felt this claimant has suffered a soft tissue injury that has resolved.

Id. at D00302.

On September 19, 2008 Richards was evaluated by Dr. Peter Dirksmeier.  After conducting his examination, Dr. Dirksmeier noted his belief that Richards' "symptoms are an exacerbation of underlying discogenic[9] pain."  Id. at D00520.  However, Dr. Dirksmeier was "not convinced that the disc herniation seen at L5-S1 [on Plaintiff's MRI] is acute or has anything to do with her work injury or present symptoms."  Id.  In his opinion

---

[9] "Discogenic" denotes "a disorder originating in or from an intervertebral disk space."  Id. at 508.

Richards was "not a candidate for any surgical intervention" and instead suggested "a conservative approach" with continued "formal physical therapy with a goal of transitioning ultimately into an independent generalized conditioning and core-strengthening program."  Id.

On October 10, 2008, Richards met with Dr. Barry Gendron at Seacoast Area Physiatry.  Dr. Gendron felt that Richards exhibited "[c]hronic low back pain . . . [and] [r]ight leg pain which may represent lumbar radiculopathy."  Id. at D00528.  In Dr. Gendron's opinion, Richards had the ability "to work 6 hours a day, 4 to 5 days a week with frequent change in position from standing to walking to sitting and not standing or sitting for more than 15 minutes continuous."  Id.

On November 7, 2008, Joel Thone, Richards' chiropractor, released Richards to full duty work at AT&T Mobility, with no restrictions.  Id. at D00029.  After returning to work on November 20, Richards allegedly re-aggravated her injury and was unable to return to work.  In an appointment with PA-C Santangelo on December 1, 2008, Richards relayed that she was

> [V]ery sore at the end of her shift having severe lower back pain and numbness into her right leg.  The following morning she had to crawl to the bathroom and take a hot shower in hopes that her pain improved.  On

8

the way to work her right leg went numb and she ended
up crashing into some cars.  The lower back pain
continues and she is having difficulty with
ambulation.  She has not been able to return to work
because of the pain.

Id. at D00777.

On December 19, 2008, Richards was again seen by Dr.

Miller.  After conducting his examination, Dr. Miller noted that

[Richards] moves slowly, cautiously in any change of
position.  Each and every physical exam maneuver
generated a response of "pain".  She was able to stand
in place on her tiptoes and rock up on her heels but
declined to walk that way because it would increase
her back pain.  She has limited range of motion in
flexion or extension at the waist.  There is no
tenderness to palpation or percussion along the spinal
axis nor any paravertebral muscle spasm, scoliosis or
pelvic tilt.  She was tender over the sacroiliac[10]
joints bilaterally.  Seated manual motor testing shows
universal normal tone, strength and coordination
throughout both lower extremities in all myotomes[11].

Id. at D00278.

Dr. Miller recommended that x-rays be performed.  Id.

On December 29, 2008, x-rays of Richards' lumbar spine were

performed at Portsmouth Regional Hospital.  A report of those x-

---

[10] "Sacroiliac" relates to the "sacrum" which is the "segment of
the vertebral column forming part of the pelvis."  Id. at 1587,
1588.

[11] "Myotome" refers to the "muscles derived from one somite and
innervated by one segmental spinal nerve."  Id. at 1177.

rays noted as follows: "[t]here is facet hypertrophy[12] at L4-5 and L5-S1.  Sacral arches are intact.  There are mild sclerotic changes within the SI joints.  Vertebral body heights are intact.  No instability is demonstrated on flexion/extension views."  Id. at D00282.

On March 11, 2009, Richards attended a physical therapy session at Sport & Spine Physical Therapy, Inc.  After the session, Richards' therapist noted that "Deanna has made amazing progress, no longer complains of constant back pain, her TROM has improved, still painful and limited in trunk flexion, still pain with high level activities – shoveling and lifting, her posture has improved, she still presents with hamstring tightness."  Id. at D00344.  Under the "Additional Comments" section of the report, Richards' physical therapist noted: "[a]wesome progress."  Id.

On May 20, 2009, Richards was seen again by PA-C Santangelo.  Richards relayed to PA-C Santangelo that she continued to have chronic back pain and is "unable to stand more than 10-15 minutes and cannot bend forward at the waist."  Id.

---

[12] "Facet" refers to "a small smooth area on a bone."  Id. at 638.  "Hypertrophy" is the "general increase in bulk of a part of an organ, not due to tumor formation."  Id. at 857.

at D00340.  After conducting a physical examination, PA-C
Santangelo noted that Richards "appears well, alert, oriented,
in no apparent distress" and Richards exhibited "no pain on
palpation of the upper spine.  Some discomfort to palpation of
the lower spine in to the right buttock."  Id. at D00342.

On June 25, 2009, at the request of the Claims
Administrator, a Physician Advisor Review was conducted by Dr.
David Hinkamp.  As part of his review, Dr. Hinkamp spoke with
PA-C Santangelo about Richards' condition.  In his report, Dr.
Hinkamp

> [A]sked if there were objective findings from the exam
> that would support [Richards'] symptoms.  PA
> Santangelo noted a MRI from 1/16/09 that documented
> DDD without significant stenosis and some other mild
> findings. I asked if there were physical findings and
> PA Santangelo noted that the EE was limited by pain
> and this was her main finding.

Id. at D00714-15.

On August 11, 2009, Richards was seen for a follow up visit
with Seacoast Area Physiatry.  A physical examination revealed
that Richards "is in no acute distress.  She is pleasant and
cooperative.  Her pain diagram is now specific to her back,
across the lumbar spine and over the sacrum with description of

numbness occasional down her right thigh and into her foot."

Id. at D00433.  It was further noted that Richards had:

> [A] part-time, light duty work capacity 6 hours a day
> 4-5 days a week.  She can lift 10 pounds maximum, 5
> pounds frequent, bend occasionally, kneel
> occasionally, she should not squat, she may
> occasionally climb stairs, may frequently sit, stand
> or walk but should not do any 1 of these for an
> extended period of time. She may reach near and drive
> occasionally and has no limitation in fine motor.

Id. at D00434.

On November 5, 2009, Dr. Howard Rosen, board certified in pain management, submitted an independent review of Richards' medical records.  Based on his review, Dr. Rosen concluded that "[t]he findings do not support an inability for Deanna Richards to perform her duties of her job of retail sales consultant from 08/01/09 to the present."  Id. at D00545.

On November 13, 2009, Dr. Allan Brecher, board certified in orthopedic surgery, submitted an independent review of Richards' medical records.  Based on his review, Dr. Brecher concluded that "[f]rom an orthopedic perspective, she is not disabled from her regular job as of 08/01/09 through present."  Id. at D00554.

## C.   Richards' Receipt of Disability Benefits

Following her injury, Richards applied for STD benefits effective April 19, 2008, based on her inability to perform her

duties as a Retail Sales Consultant[13] ("RSC").  Richards was

awarded STD benefits and continued to receive STD benefits for

twenty-six weeks, at which time Richards began to receive LTD

benefits.  Richards received LTD benefits from October 18, 2007

through November 19, 2008.  As noted above, pursuant to a

doctor's release, Richards returned to work for one day on

November 20, 2008.  Richards was unable to continue working and

she resumed her receipt of LTD benefits on November 21, 2008.

Richards continued receiving LTD benefits until August 1, 2009

when she was informed by the Claims Administrator that her

---

[13] The duties of a "Retail Sales Consultant" (the position that
Richards held at AT&T) are as follows:

> Assist[s] new and existing customer[s] with the
> purchase of wireless equipment and service.
> Provides customer assistance with local market
> promotions.  Works exclusively in a company
> owned retail store or kiosk.

The Administrative Claim File also included a supplemental
job description from Richards' supervisor, Jeff Smith.
Smith described Richards' position as follows:

> [The job duties include] standing and walking, typing
> in orders.  Only time she can normally sit is on break
> and lunch in the back room.  She also bends to lift a
> roll top cabinet door several times an hour if Sales
> are good.  The door may weigh up to 15 lbs . . . with
> resistance.  She does not carry more than 5 pounds
> though.

Admin. R. D00721.

benefits had ceased because "clinical information does not document a severity of your condition(s) that supports your inability to perform your occupation." Id. at D00412.  The Claims Administrator identified the basis for its decision as the "documentation provided by Physician's Assistant Judith Santangelo, Dr. Clinton Miller, Dr. Glassman and [Plaintiff's] Physical Therapist, Emily."  Id. at D00410.

Through counsel, Richards appealed the denial of her LTD benefits.  The denial of Richards' LTD benefits was upheld on November 16, 2009.  Although Richards had updated her claim file with additional medical records, the letter upholding the denial of her benefits noted that "none [of the referenced findings] are documented to be so severe as to prevent you from performing the duties of your job as Retail Sales Consultant, with or without reasonable accommodation from August 1, 2009 through the present."  Id. at D00557.  The Appeals Specialist noted that the basis of its decision was "medical information from Barry Gendron, MD; Stuart Glassman, MD; Sport & Spine Physical Therapy, Inc.; and Seacoast Area Physiatry dated April 14, 2008 through October 16, 2009" as well as recommendations made

pursuant to the independent file reviews performed by Dr. Howard
Rosen and Dr. Allan Brecher.  Id. at D00557.


## II.   STANDARD OF REVIEW

The standard of review in an ERISA case differs from that
in an ordinary civil case, where summary judgment is designed to
screen out cases that raise no trialworthy issues.  See, e.g.,
Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir.
2005).  In the ERISA context "summary judgment is simply a
vehicle for deciding the issue[s]."  Cusson v. Liberty Life
Assurance Co. of Boston, 592 F.3d 215, 224 (1st Cir. 2010).

Where, as here, an ERISA benefits plan gives the
administrator the discretion to determine eligibility for
benefits, the administrator's decision must be upheld unless it
is "arbitrary, capricious, or an abuse of discretion."  Wright
v. R.R. Donnelley & Sons Co. Grp. Benefits Plan, 402 F.3d 67, 74
(1st Cir. 2005).  An administrator's decision is not arbitrary
or capricious if it is "reasoned and supported by substantial
evidence."  Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213
(1st Cir. 2004).  Put differently, while my review is not a
"rubber stamp," I must uphold the Claims Administrator's

decision "if there is any reasonable basis for it."  Wallace v.
Johnson & Johnson, 585 F.3d 11, 15 (1st Cir. 2009).


### III. __ANALYSIS__

Richards takes issue with the Claims Administrator's
determination for two reasons.  First, Richards argues that the
Claims Administrator's decision to terminate her LTD benefits
was arbitrary and capricious because two evaluations indicate
that she "was unable to perform the essential functions of her
job" and consequently was "Disabled" under the terms of the
Program.  Pl.'s Mot. for J. on the Admin. R. at 8, Doc. No. 11.
Next, Richards faults the Claims Administrator for relying "upon
the opinions of two independent medical reviewers – neither of
which examined or spoke with Ms. Richards."  Id. at 9.

### A.  __The Claims Administrator's Decision__

In order to qualify for LTD benefits under the AT&T
Program, an individual must be unable to perform the "work
activity that [the employee] was hired to regularly perform for
the Employer."  SPD at 11, 29 (Docket No. 1-1).  As noted in the
supplemental job description provided by Richards' supervisor,
RSCs are often required to stand for extended periods of time.

See Admin. R. D00440.  Recognizing this as an essential function of her job, Richards cites two evaluations which indicate that she may not have been up to the task.  See Pl.'s Mot. for J. on the Admin. R. at 9, Doc No. 11.

First Richards refers to a May 20, 2009 note by PA-C Santangelo in which Santangelo reported that Richards could not "stand longer than 15 min without pain."[14]  Id. at D00339.  In addition, Richards highlights an August 11, 2009 work release indicating that Richards had a "part-time, light duty work capacity 6 hours a day, 4-5 days a week" in which she could "lift 10 pounds maximum, 5 pounds frequent[ly], bend occasionally, kneel occasionally . . . frequently sit, stand or walk but should not do any [one] of those for any extended period of time."  Id. at D00434.

---

[14] While the opinion of a treating physician is not entitled to any special deference, see Morales-Alejandro v. Med. Card Sys., Inc., 486 F.3d 693, 700 (1st Cir. 2007) ("a plan administrator is not obligated to accept or even to give particular weight to the opinion of a claimant's treating physician"), plan administrators may not arbitrarily refuse to credit reliable evidence.  See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832 (2003).  Therefore, it is worth noting that the Claims Administrator considered PA-C Santangelo's opinion, but determined that it was entitled to less weight because it was based mainly on Richards' self-reported pain symptoms as opposed to objective physical findings.  See Admin. R. D00410-12, D00714-15.

While these evaluations are consistent with Richards' claim that she was unable to fully perform her role as an RSC, the existence of these reports is not enough to render the Claims Administrator's decision arbitrary and capricious.  "Evidence contrary to an administrator's decision does not make the decision unreasonable, provided substantial evidence supports the decision."  Wright, 402 F.3d at 74.  In this case, there is sufficient evidence to reasonably support the Claims Administrator's conflicting conclusion that Richards was able to return to her position as an RSC, and therefore its decision must be upheld.  Stamp v. Metro. Life Ins. Co., 531 F.3d 84, 87 (1st Cir. 2008).

Several medical opinions and reports cited by both the Claims Administrator and Appeals Specialist reinforce the conclusion Richards' back ailments were not so painful and severe as to prevent her from performing her role as an RSC.  In his June 25, 2008 evaluation of Richards, Dr. Miller noted that Richards "appear[ed] in no acute distress" and she moved "about the office and examining room with ease."  Admin. R. D00280.  Additionally, Dr. Miller went on to note that the "[g]eneral physical examination is notable only for weight issues" and

"detailed manual motor testing shows universal normal tone, strength and coordination throughout both lower extremities." Id. That fall, in two separate evaluations, both Dr. Glassman and Richards' chiropractor concluded that Richards was capable of returning to work full time with no work restrictions. Id. at D00029, D00302. Later, in the spring of 2009, Richards' physical therapist noted that Richards had "made amazing progress" and while Richards still experienced "pain with high level activities – shoveling and lifting" she "no longer complain[ed] of constant back pain." Id. at D00344. Additionally, PA-C Santangelo indicated that Richards "appear[ed] well, alert, oriented, [and] in no apparent distress" with "no pain on palpation of the upper spine" and only "[s]ome discomfort to palpation of the lower spine in to the right buttock." Id. at D00342. Finally, relying in part on these evaluations and other evidence in the record, three independent medical reviews each concluded that Richards was capable of returning to her position. Id. at D00544-46; D00552-55; D00712-15.

Based on the evidence available to the Claims Administrator, I cannot say that no reasonable basis existed to

19

support its decision.  See Medina v. Metro. Life Ins. Co., 588
F.3d 41, 45 (1st Cir. 2009).  The records and reports cited by
the Claims Administrator, as well as the three independent
medical reviews of the record, all support the conclusion that
Richards was able to return to her position as a RSC.  As a
result, the Claims Administrator's decision to discontinue
Richards' LTD benefits was not arbitrary, capricious or an abuse
of discretion and must be upheld.  See id.

B.    **Reliance on Independent Medical Examiner's Opinions**

Richards also faults the Claims Administrator for its
reliance on the opinions of three independent medical physicians
because the examiners neither "examined nor spoke with Ms.
Richards."[15]  This argument carries little heft.  The fact that
an independent medical examiner may not physically examine a
claimant does not detract from his or her reliably.  See Gannon,
360 F.3d at 214 ("we have treated a nonexamining physician's

---

[15] Richards also claims that the independent medical examiners'
opinions should be discredited because they made their decisions
"based on their interpretation of the reports that were
submitted previously."  Pl.'s Mot. for J. on the Admin. R. at 9,
Doc. No. 11.  However, two of the examiners decisions were made
as part of Richards' appeal, after Richards supplemented her
claims file with additional medical records.  See Admin. R.
D00457, D00462, D00469-531, D00533, D00544-550.

review of a claimant's file as reliable medical evidence on several occasions").  Moreover, the Claims Administrator's decision was not based solely on the recommendations of the independent examiners.  The Claims Administrator decision included citations to the evaluations of Richards' physical therapist as well as Drs. Glassman, Thone and PA-C Santangelo, all of whom physically examined Richards.  <u>See</u> Admin. R. D00410, D00557.  As a result, the Claims Administrator was justified in relying in part on the opinions of the independent medical examiners as a basis for its decision that Richards did not qualify for continued LTD benefits.

## IV.  <u>CONCLUSION</u>

The evidence in the record, including the opinions of the independent medical examiners, reasonably supports a conclusion that Richards was able to resume her position as an RSC at AT&T Mobility.  As a result, the Claims Administrator's decision that Richards was not entitled to the continued receipt of LTD benefits must be upheld.  Accordingly, I grant the Program's motion for judgment on the administrative record (Doc. No. 12)

and deny Richards' motion (Doc. No. 11).  The clerk is directed
to enter judgment and close the case.

SO ORDERED.


                                    /s/Paul Barbadoro
                                    Paul Barbadoro
                                    United States District Judge
February 16, 2011

cc:  John R. Martin, Esq.
     Stephen L. Rosetti, Esq.
     Vicky S. Roundy, Esq.
     Todd J. Shill, Esq.